IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Elgin M. Selbee, ) | Civil Action No. 8:08-810-GRA-BHH |
| )  Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Elgin M. Selbee, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 45 years old at the time of the decision of the Administrative Law Judge (ALJ). (R. at 65.) He has a tenth grade education and prior work experience as a caster. (R. at 100.) The plaintiff alleges he became disabled on January 1, 1999, due to respiratory and mental problems, including chronic obstructive pulmonary disease, asthma, obesity, sleep apnea, anxiety, and depression. (R. at 27, 248.)

The plaintiff filed an application for supplemental security income benefits (SSI) on September 20, 2005. (R. at 26-27.) His applications were denied in initial and reconsidered determinations. (R. at 26-27). An administrative hearing was held on July 11,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2007, before an ALJ. (R. at 242-65). In a decision dated September 7, 2007, the ALJ found that the plaintiff was not disabled because he retained the residual functional capacity to perform a significant range of light work that involved the sit/stand option, the avoidance of certain environmental factors, and mental limitations. (R. 11-25.)    As the Appeals Council denied the plaintiff's request for review (R. at 2-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant has not engaged in substantial gainful activity since September 20, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq*).
>
> (2)   The claimant has the following severe impairments: chronic obstructive pulmonary disease and a major depressive disorder (20 CFR 416.920(c)).
>
> (3)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4)   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work. Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand for 2 hours in an 8-hour day, walk for 2 hours in an 8-hour day, and sit for 6 hours in an 8-hour day with an at will sit/stand option. The claimant can never climb and must avoid concentrated exposure to temperature extremes, humidity, and fumes. He is capable of performing simple, 1 to 2 step tasks; dealing with things rather than people; and being around employees throughout the workday but with only occasional conversation and interpersonal interaction.  Such a residual functional capacity is well supported by the weight of the evidence.
>
> (5)   As a result of this residual functional capacity as described above, the claimant is unable to perform any past relevant work (20 CFR 416.965).

> (6) The claimant was born on February 26, 1962 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> (7) The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> (8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c), and 416.966).
>
> (10) The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2005, the date the application was filed (20 CFR 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at

20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere

> scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to consider the enhancing effect of the plaintiff's obesity; (2) failing to perform a proper credibility analysis; and (3) failing to give controlling weight to his treating physician. The Court will address each alleged error in turn.

**I.    Obesity**

The plaintiff first contends that the ALJ failed to consider the enhancing effect of obesity at each stage of the five-step sequential evaluation process, in violation of Social Security Ruling 02-1p. The plaintiff does not challenge the ALJ's determination that his obesity was non-severe but only that the impairment was not also considered at subsequent stages of the sequential process as a contributing factor to his disability.

Social Security Ruling 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p. The Ruling recognizes obesity can cause limitations in all exertional and postural functions. *See id.* It recognizes that obesity makes it harder for the chest and lungs to expand. *See id.* Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. *See id.* The Ruling recognizes

obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders. *See id.* The ALJ should consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from doing his past relevant work or other work in the national economy. SSR 02-01p at *3.

The Court finds that the ALJ's consideration of the plaintiff's obesity is less than thoroughly consistent with SSR 02-01p. As the plaintiff complains, the ALJ made explicit reference to the plaintiff's obesity only insofar as he found that condition non-severe. (R. at 16.) But, while the ALJ's treatment of the plaintiff's obesity seems mechanically deficient, the Court cannot recommend remand for it. Critically, the plaintiff has offered no argument as to what additional limitations he suffered as a result of his obesity beyond those which the ALJ already acknowledged. In this sense, the plaintiff has failed to demonstrate that the ALJ's error was anything other than harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

The plaintiff does argue that his obesity contributed to sleep apnea, as the regulations contemplate, SSR 02-1p. (R. at 126, 180, 197, 204-05.) Even still, sleep apnea is not a limitation, it is a condition. In that regard, the plaintiff still has failed to put forward evidence of additional limitations resulting from the sleep apnea, obesity, or both. Moreover, the ALJ was not unaware of the plaintiff's sleep apnea. (R. at 16.) He found it non-severe and, further, found that the plaintiff required no treatment for the condition after his filing date. (R. at 17.) In the absence of some evidence that more specific consideration of the plaintiff's obesity would have made any material difference at some subsequent stage of the analysis, the Court cannot find error.

6

**II.     Credibility Analysis**

The plaintiff next complains that the ALJ failed to perform a proper credibility analysis. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

By all accounts, the ALJ performed this analysis as prescribed. (R. at 20.) The plaintiff does not seriously contend otherwise but complains that the reasons for discrediting the plaintiff's subjective representations were not substantial and, in many instances, simply inaccurate.

The plaintiff testified that he was unable to work due to a breathing disorder and psychiatric problems. He testified that his breathing disorder limited his ability to lift, walk distances, and do anything strenuous. (R. at 248.) He also claimed to be limited in his ability to be exposed to dust and chemicals. (R. at 248.) The plaintiff claimed that temperature and humidity also affected his breathing. When it got hot, it was difficult for him to breathe, but, when it was cold, the plaintiff experienced shortness of breath,

7

coughing, and weakness. (R. at 249.) The plaintiff ultimately testified that he could not stand or walk for more than about 5 minutes before he would become wheezy and start "coughing and gagging." (R. at 250.)

The plaintiff reported that his psychiatric problems included depression and panic attacks. (R. at 249.) The plaintiff testified that he experienced attacks as often as two to three times a day. (R. at 249.) The plaintiff stated that his panic attacks were caused by his life situation. (R. at 249-250.) The plaintiff claimed that although he was receiving psychiatric treatment, it was not really helping. He testified that his anxiety and depression persisted. (R. at 250.)

The ALJ rejected the plaintiff's testimony as less than credible on the following grounds:

- The plaintiff was only seen on an "occasional basis" after his September 2005 filing date;

- Symptom exacerbations were generally brought on by familial crises or medication noncompliance;

- Lack of objective medical findings;

- Noncompliance with treatment;

- A failure to complain of symptoms to his doctors;

- Able to perform a variety of daily activities; and

- The claimant was supposedly able to fill out Social Security paperwork, despite his complaints of being limited in reading and writing.

(R. at 20.)     Without limiting the bases upon which the ALJ relied, it is relatively clear to the Court that the ALJ was principally compelled by what he perceived were issues with noncompliance, daily activities, and want of treatment. *See id.* Generally, such considerations are relevant to the credibility analysis. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993) (failure to take prescribed medication cited with approval as a factor in discrediting a claimant's testimony)*; Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (a claimant's daily activities, such as performing exercise, cooking, and doing laundry were inconsistent with the claimant's complaints of excruciating pain and inability to perform

basic physical work activities); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *Murphy v. Sullivan*, 1994 WL 677656, at * 1-2 (4th Cir. December 05, 1994) (finding medication effective).

The plaintiff complains, however, that the ALJ did not have substantial evidence to find noncompliance, a lack of treatment, significant daily activities, or any other ground to disbelieve the plaintiff. The Court will address each issue in turn.

### A.    Noncompliance

The Court views the ALJ's finding of noncompliance as almost completely indefensible. For example, the ALJ summarily states that treatment notes in February and June 2007 indicate that the plaintiff was "noncompliant with his treatment regimen." (R. at 20.) There is no further discussion of those notes by the ALJ. In truth, the notes reflect that the plaintiff had "run out of his medication and [could] **not afford to pay for them**." (R. at 115; see also R. at 123 (emphasis added).) This is, in fact, consistent with the plaintiff's current position that any evidence of noncompliance was the result of financial constraints on his ability to afford medication. (See, e.g., Pl. Ex. 1 at 17, 38, 48, March 2, 2006 & May 28, 2007 records.) It is well-established that "poverty excuses non-compliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988). It is the Secretary's burden to produce evidence of *unjustified* noncompliance. *See Preston v. Heckler,* 769 F.2d 988, 990 & n.* (4th Cir.1985); *Dawkins*, 848 F.2d at 1214 n.8.

Likewise, other examples of alleged noncompliance, cited by the ALJ, are equally unremarkable. The ALJ cited to a one sentence notation from a December 15, 2005 record of Dr. Charles H. Banov, which stated that the plaintiff "apparently has not bee [sic] getting the Xopenex on a regular basis." (R. at 155.) The ALJ also relied upon a brief notation in another December 2005 record, which indicated that the plaintiff hadn't used his peek flow meter "in a while." (R. at 183.) The Court can hardly agree that these records even suggest noncompliance, much less unjustified noncompliance. The records do not outline

the anticipated regimen from which the plaintiff might have deviated. Neither of the records indicate how much or how regularly the plaintiff was expected to have taken Xopenex or used his peek flow meter. It is not clear whether they were to be used in regular intervals or as needed. Moreover, there is no discussion of why the plaintiff may have failed to use either one. The records certainly do not indicate that the plaintiff was chastened for noncompliance, if any. In fact, the records, as far as the Court can tell are completely devoid of any suggestion by the plaintiff's physicians that noncompliance was an issue of any kind. Such notations are typically included.

Ultimately, it is the Secretary's burden to show that noncompliance was unjustified. *See Preston,* 769 F.2d 988, 990 & n.*   He has failed to do so. The plaintiff has come forward with evidence that the noncompliance was reasonably justified by his indigence. The ALJ did not cite substantial evidence to the contrary, such that including noncompliance as a basis for discounting the plaintiff's testimony was warranted.

On remand, therefore, if noncompliance is to be a basis for denying benefits, the ALJ must point to substantial evidence that the plaintiff's impairment is "reasonably remediable by the particular individual involved, given his social or psychological situation, and that this claimant lacks good cause for failing to follow a prescribed treatment program." *Id*. (citations and quotations omitted).

### B.     Lack of treatment

The ALJ stated that the plaintiff only "required intermittent treatment." (R. at 20.) The ALJ did not expound upon either the meaning or the consequence of this observation. The ALJ does not examine how often the plaintiff sought treatment or suggest the frequency he presumed would be evident. The plaintiff, by contrast, has put forward evidence of some 29 medical visits between September 2005 and July 2007. (Pl. Ex. 1, R. at 76, 103-09, 112-14, 125-28, 155-57, 180-82.) The defendant would argue that only seven of those 29 visits were related to the plaintiff's respiratory condition. (R. at 76, 112-14, 155-57.)   The Court is not sure this is an accurate representation and, even to the

extent it is, how it might be material. Certainly, only seven of those visits were to the National, Allergy, Asthma & Urticaria Centers of Charleston, which treated his respiratory problems. *Id*. But, others certainly appear to have been related to his respiratory condition as well. (See, e.g., R. at 160-61.) Moreover, at least 18 other medical visits appear to have been related to the plaintiff's depression and emotional problems, between September 2005 and May 2007. (Pl. Brief Ex. 1, R. at 103-09.)The ALJ specifically commented that the plaintiff "required generally intermittent treatment for these conditions," referring specifically to the plaintiff's pulmonary disease *and* depression. (R. at 20.) To the Court, the record does not speak of treatment which could be characterized as intermittent. As stated, the ALJ made no effort to establish what regularity of treatment one ought to expect of an individual with disabling respiratory problems and depression. This seems a substantial oversight insofar as the record evidences a facially significant number of visits. If the visits, however, were somehow, in fact, uncommonly sparse for the conditions at issue, it was the ALJ's responsibility to make the case. The Court cannot review reasons not given.

The defendant would also argue that significant gaps in treatment may be considered by the ALJ, *see Hays v. Sullivan*, 907 F.2d 1453, 1457 (4th Cir. 1990), such that the lack of treatment between May 1998 and October 2004 reasonably justifies discounting the plaintiff's credibility. First, the ALJ did not cite this fact as a basis. Second, the time period does not seem to qualify as an actual gap in treatment. Those years, 1998-2004, proceed a continuous period of time, roughly from September 2005 through July 2007, wherein treatment was apparently very consistent. The so-called "gap" is simply a period of time predating the most recent two years, wherein treatment was ostensibly less. This might affect the determination of *when* the disability actually started but it does not seem to say anything about the credibility of the plaintiff's symptoms. In other words, this is not a scenario where the plaintiff complains of severe disability over a two-year period and then, during a 10-month period during the second year, inexplicably seeks no treatment

whatsoever. There is a consistent and proximate block of time, without a gap leading up to July 11, 2007, the date of the hearing before the ALJ. Regardless, the ALJ did not explain his thinking in this regard, one way or the other, and the Court will not presume his intent.

### C.     Daily Activities

The ALJ also cited the plaintiff's daily activities as a basis for not believing the plaintiff's subjective complaints of pain and limitation. (R. at 20.) The ALJ noted, but only briefly, that the plaintiff was "able to clean up his room and watch television. He stated that he was able to do housework and yard work fairly well." (R. at 20.) Certainly, evidence of daily activities is highly probative to the credibility analysis. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986); *Craig*, 76 F.3d at 594 (noting the factors to be considered in the credibility process include evaluation of plaintiff's activities); *Mickles*, 29 F.3d at 921 (the only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life). But evidence that the plaintiff can do some housework and chores, at his "own pace and in [his] own manner" is typically insufficient to establish that he can engage in gainful employment which requires concentration without distraction from the discomfort and difficulty alleged. *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980). The ALJ's discussion of the plaintiff's daily activities was obviously only one consideration among many, but as the strength of those other bases begins to fail, the daily activities' analysis begins to emerge as too thin a reed upon which to discount the plaintiff's testimony. The ALJ has not explained how the household chores performed are evidence that the plaintiff can in fact stand for longer than 5 minutes at a time or be exposed to chemicals and dust when he claims he cannot. More explanation is required. The Court would not remand on this ground alone; there is no substantial error in the ALJ's treatment. But, when viewed in combination with the entirety of the credibility analysis, the discussion seems wanting.

### D.     Medication

The ALJ also found that the plaintiff's conditions were generally controlled by medication. (R. at 20, 22-23.) Again, this is a relevant consideration. *See Gross*, 785 F.2d at 1166. Without discussion, the Commissioner has defended the ALJ's determination on this point with a parenthetical, record string-cite. (Def. Brief at 12.) A review of those records convinces the Court that the case for the controlling effect of the plaintiff's medications has been overstated to a problematic degree. The following is a survey of the relevant records.

• **The plaintiff's respiratory condition was "fairly" controlled with medications.** (R. at 197.)

As the plaintiff highlights, the next part of the quoted sentence is "however, the patient does have frequent albuterol use, exercise induced asthma and occasional nocturnal awakenings." (R. at 197.)

• **The Plaintiff's respiratory symptoms were stable as long as he took his medication.** (R. at 112.)

This remark, from Dr. Allen Kaplan on April 20, 2006, admittedly states that the plaintiff's symptoms were stable *on that day*. But, at the next office visit, on July 27, 2006, Dr. Kaplan, stated: "I saw him last on April 20th. At that time his symptoms were relatively quiescent. However, for the past month he has had a gradual increase in symptoms including wheezing, shortness of breath, some cough and exercise intolerance. Nevertheless he has been using his medication on a regular basis." (R. at 113.) Dr. Kaplan further noted that testing performed on July 27, 2006, found "considerable restriction" in the plaintiff's breathing capacity, despite high-dose breathing treatments. *Id*.

• **The plaintiff's respiratory symptoms were "relatively quiescent" with the use of medication.** (R. at 193.)

The record actually indicates that the plaintiff's symptoms had been quiescent for only a two month period, from March to May 2005. *Id*. The plaintiff continued to use his nebulizer between one and three times a day, and the albuterol inhaler once or twice each

day, on average. *Id*. He had occasional coughing which sometimes caused him to vomit (R. at 193.)

The Court finds that reliance on these remarks and other similar notations in the record to come to a conclusion that the medication has effectively controlled the plaintiff's conditions seems to mischaracterize the record as a whole. The plaintiff has identified significant objective evidence indicating that the conditions were persistent and not stable as a result of medication. (See, e.g, R. at 113, 124, 181-82.)

The ALJ cited numerous bases for rejecting the plaintiff's subjective representations as not wholly credible. It is clear that the ALJ meant to be thorough and was persuaded that the plaintiff's own view of things was not fully believable. The Court, however, finds that too many of the central reasons for that conclusion seem to be left unexplained or, worse, not accurately presented. To the extent the ALJ made reference to other reasons not to believe the plaintiff, he did so in fairly conclusory fashion, and those reasons, ultimately, are overshadowed by the central ones, discussed above, which are substantially unpersuasive.

The Court would recommend remand for the ALJ to clarify his credibility analysis as to the matters discussed above.

## III.   Treating Physician

The plaintiff lastly contends that the ALJ failed to give the opinion of his treating physician, Dr. Allen Kaplan controlling authority. Concerning the plaintiff, Dr. Kaplan concluded, on May 16, 2006, as follows:

> He has considerable small airway disease and pulmonary function testing reveals an FEF 25-75 which has been as low as 23% of normal and no higher than upper 60's. His FEVI is usually 50-60% of normal, and the best value we have ever obtained was 75%. It is my opinion that Mr. Selbee is significantly disabled by his respiratory problem, and in fact has been unemployed for a protracted period of time. I would support his application for disability.

(R. at 124.)   Later, in July 2007, Dr. Kaplan again stated that based on the plaintiff's course, he appeared "unable to sustain employment and would appear to be a candidate for disability."  (R. at 110.)  The doctor's letter further stated that the plaintiff's "last lung function was very abnormal with a forced vital capacity of only 34%, which indicated what was called restrictive lung disease, but obstruction was superimposed upon this."  *Id*.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."   *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *See Blalock*, 483 F.2d at 775.

The ALJ accorded Dr. Kaplan's opinion "minimal weight" essentially for the same reasons he found the plaintiff's testimony incredible.  The ALJ expressly stated that Dr. Kaplan's notes reflected the effectiveness of medications, intermittent treatment sought,

and medicinal noncompliance. (R. at 21.) The Court has already explained, however, why these views of the ALJ are a questionable interpretation of the record at best. There is not substantial evidence of noncompliance and if the record can be characterized as demonstrating only intermittent treatment, the ALJ nor the defendant has explained it. The ALJ specifically dismissed "excerbations of [the plaintiff's] lung condition" based on medical noncompliance. *Id*. To the extent any such noncompliance existed to a significant degree, the ALJ has made no effort to establish whether that noncompliance was unjustified, as required. As a legal matter, the ALJ has simply not defended his view that Dr. Kaplan's opinion was somehow inconsistent with substantial evidence of record.

The parties dispute the propriety of the ALJ's consideration of Dr. Charles Banov's opinion. Dr. Banov was also a treating physician who opined in March 2005 that the plaintiff could work with certain environmental restrictions. (R. at 196.) Dr. Banov saw the plaintiff again in December 2005 and did not revise his earlier assessment. (R. at 155.) The defendant contends that it was reasonable for the ALJ to infer both that the plaintiff's condition improved with treatment and that because he did not revise his earlier opinion that Dr. Banov had not changed his assessment. The whole matter, to the Court, seems speculative and an impermissible post-hoc rationalization. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). The ALJ did not specify any inferences drawn but instead appeared to rotely rely on Dr. Banov over Dr. Kaplan, without explanation, and notwithstanding Dr. Kaplan's more recent opinions. Again, this is largely a failure of explanation. The ALJ must clarify his view of the issues regarding

noncompliance and intermittent treatment and further give more precise reasons for choosing Dr. Banov's opinion over Dr. Kaplan's.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence.  It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above.  *See Melkonyan v. Sullivan*, 501 U.S. 89
(1991).

IT IS SO RECOMMENDED.


July 7, 2009
Greenville, South Carolina

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE